UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
INGER JENSEN,

                    Plaintiff,

          -against-

UNTIED STATES OF AMERICA,

                   Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-01116 (OEM) (PK)

ORELIA E. MERCHANT, United States District Judge:

       Pro se Plaintiff Inger Jensen ("Plaintiff") brings this action against Defendant the United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.,* and the Eighth Amendment's prohibition on cruel and unusual punishment. *See* Second Amended Complaint ("SAC"), ECF 33. Plaintiff alleges she received inadequate dental treatment while housed at two United States Bureau of Prisons ("BOP") facilities, the Federal Correctional Institution in Danbury, Connecticut ("FCI-Danbury") and the Metropolitan Detention Center, in Brooklyn, New York ("MDC"), constituting medical malpractice, because the dental care she received was "basic," and she wanted to see a specialist. SAC ¶¶ 2, 20-23. Plaintiff also alleges that FCI-Danbury had inadequate heating conditions during the winter of 2018-2019. *Id.* ¶¶ 47-82. Further, Plaintiff alleges that FCI-Danbury had inadequate cooling on hot days, that the incarcerated women at MDC were forced to wear oversized uniforms, and that FCI-Danbury and MDC had unreliable visitation privileges, a prohibition on having pillows, and a practice of allowing incarcerated individuals only one blanket during freezing winters, which amounted to cruel and unusual punishment in violation of the Eighth Amendment. *Id.* ¶¶ 83-110.

Before the Court is the Defendant's fully briefed motion to dismiss the SAC for lack of subject-matter jurisdiction and for failure to state claims on which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.[1]

For the following reasons, Defendant's motion is granted in part and denied in part.

## BACKGROUND[2]

### A.     Plaintiff's Allegations in Second Amended Complaint

#### 1.     Alleged Inadequate Dental Care at FCI-Danbury and MDC

Plaintiff surrendered to FCI-Danbury in 2012 to begin her term of incarceration.  Before surrendering, "[Plaintiff] was diagnosed with progressive oral disease," which "was documented at FCI-Danbury and MDC."  SAC ¶ 10.  During "all [her] years at FCI-Danbury," Plaintiff was regularly examined by dental staff regarding her gingivitis condition and the "increasing deterioration of [her] teeth, gums, [and] jawline" but the staff provided her with only "basic treatment" that consisted of "nothing more than minimal and routine maintenance."  *Id.* ¶¶ 16, 19.  According to Plaintiff, the staff knew that her condition required special treatment and that their "recommended" treatment would not treat her condition, but instead actively worsen it.  *Id.* ¶¶ 18, 20.  Plaintiff further alleges that, despite her multiple requests to see a dental specialist, FCI-Danbury staff denied her requests.  *Id.* ¶ 19.  Plaintiff alleges that "at every visit", she urged the staff to reconsider its course of treatment and "even offered" to pay herself to see a dental specialist. *Id.* ¶¶ 22, 23.

Plaintiff states that, on an unspecified date, she was transferred from FCI-Danbury to MDC .  SAC ¶ 26.  "For all [her] years at MDC[,]" Plaintiff alleges she also regularly saw the dental

---

[1] Defendant's Motion to Dismiss ("Def.'s Mot."), ECF 37; Memorandum of Law ("Def.'s MOL"), ECF 39; Plaintiff's Response in Opposition ("Pl.'s Opp."), ECF 41; Defendant Reply ("Def.'s Reply"), ECF 40.

[2] Plaintiff's factual allegations are taken as true only for the purpose of this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) standard.  *See* supra at 9-11.

staff but received basic treatment, which did nothing to address her deteriorating dental condition, of which the MDC staff were "fully aware." *Id.* ¶¶ 27-30.  She alleges that MDC staff ignored her numerous requests to see a specialist.  *Id.* ¶¶ 30-36.

Plaintiff asserts that she was transferred back to FCI-Danbury, but she does not provide a timeframe.  SAC ¶ 37.  Plaintiff alleges that the FCI-Danbury staff eventually "approved [her] request to see a specialist" but that bureaucratic infighting and red tape ultimately prevented her from seeing that specialist.  *Id.* ¶ 39.  Plaintiff alleges that her last dental visit was in 2020, "just prior to [her] release to [h]ome [c]onfinement."  *Id.* ¶ 41.  Plaintiff alleges that, because of the "basic treatment" she received at FCI-Danbury and MDC, she "suffered extensive, irreparable bone loss in [her] jaw and had to have all of [her] teeth removed" and ultimately received dental implants.  *Id.* ¶ 44.

## 2.    Alleged Inadequate Heating Conditions at FCI-Danbury

Plaintiff states that she was incarcerated at FCI-Danbury during the 2018-2019 winter. SAC ¶ 47.  During that winter, Plaintiff alleges that "the heat [at FCI-Danbury] . . . stopped working" and that instead of fixing the issue, FCI-Danbury staff "resorted to dangerous and inhumane alternatives to heat the building."  *Id.* ¶¶ 48-49.

Specifically, Plaintiff alleges that FCI-Danbury staff installed "a makeshift heating system that pumped chemical-ladened air . . . directly in the building" which "reeked of kerosene." *Id.* ¶¶ 50-51.  Plaintiff alleges that the makeshift system required the building's exterior doors "to remain cracked open at all times" which "counterproductively let in [] freezing winter cold, rain, and snow into the building" and onto incarcerated person's beds.  *Id.* ¶¶ 55-56.

Plaintiff further alleges that, to prevent the cold air and snow from entering the building, FCI-Danbury staff "advised [the inmates] to board up the gaps in the doorways with cardboard"

and to use tape and extra chairs to hold the pieces of cardboard in place. SAC ¶ 58. Plaintiff alleges that this solution posed a safety hazard because the "fire exits [were only] further obstructed" by the patchwork of cardboard pieces. *Id.* ¶ 60. Plaintiff also states that the fumes that emanated from the makeshift heating system "permeated [throughout] the building," which made her and other incarcerated persons sick to the point that on or about December 2018 or January 2019, Plaintiff lost consciousness. *Id.* ¶¶ 60, 67, 70. She alleges that, following her loss of consciousness, an "officer was ordered not to take [her]" to see a doctor. *Id.* ¶ 70. Plaintiff also alleges that FCI-Danbury staff and the assistant warden "threatened" to send anyone who complained about the fumes to the segregated housing unit ("SHU") and that the warden said "he would 'fuck anyone that fuck[ed] with [his] job!" *Id.* ¶ 65 (alterations in original).

### 3. Allegations Regarding Visitation Privileges, Overize Uniforms, Pillows and Blankets, and Inadequate Cooling at FCI-Danbury and MDC

In the third cause of action for cruel and unusual punishment under the Eighth Amendment, Plaintiff raises several allegations regarding her period of incarceration at FCI-Danbury and MDC. *See generally* SAC ¶¶ 83-111.

Plaintiff alleges that "FCI Danbury and MDC" staff "repeatedly violated inmate[s'] [visitation rights], including refus[ing] to let in qualified visitors under ever-changing []schedules that contradicted the stated visiting hours." SAC ¶ 98. For example, Plaintiff alleges that at FCI-Danbury, on an unspecified Mother's Day, two of her children arrived "on time before inmate count" but an officer "refused to let them in," incorrectly contending that her children had arrived at the "wrong time." *Id.* ¶¶ 99-100. Despite her children insisting that they had arrived on time and were on Plaintiff's visitor list, FCI-Danbury supervisors denied them entry. *Id.* ¶¶ 101-02. Plaintiff alleges that, because of the incident, her children "were banned from FCI-Danbury for about a year or more." *Id.* ¶ 103. Plaintiff alleges that her children's visits were "[her] lifeline"

while incarcerated. *Id.* ¶ 104.  Plaintiff asserts that her visitation rights were violated as a result of "widespread lack of training, poor oversight" and "total disregard for the health and well-being of prisoners" at FCI Danbury and MDC. *Id.* ¶ 106.

Further, Plaintiff alleges the following: that incarcerated women at MDC were "forced to wear grossly plus-size male inmate uniforms, including to visits with family and friends," SAC ¶ 87; that, during "freezing winters," incarcerated persons "were given a single blanket and officers would run 'shakedowns,' taking away any extra blankets," *id.* ¶ 91; and that during summers at FCI-Danbury, she and other incarcerated persons "had nothing more than a single giant fan and were forced to buy mini ones at the commissary (if [they] could afford) to keep cool," *id.* ¶ 94, and that they "were not entitled to pillows," *id.* ¶ 96.

## B.    Plaintiff's Administrative Claims[3]

On November 28, 2020, Jensen mailed a Standard Form 95 ("SF-95") to the BOP, which is a form used to present claims against the United States under the FTCA, seeking $14 million dollars in damages for personal injury and attached a letter describing her claims of inadequate dental care at both FCI-Danbury and MDC and inadequate heating conditions at FCI-Danbury. *See* Ex. A at 1-4.  By a response letter dated December 22, 2020, the BOP returned Plaintiff's SF-95 and attachments "because [her] claim involve[d] separate allegations against [the BOP]" and therefore Plaintiff would have to "resubmit each claim separately" so that the BOP could "properly investigate the merits of [each of Plaintiff's] claims."  Ex. A. at 8.

---

[3]*See* Declaration of AUSA Melanie Speigh in Support of Defendant's Motion to Dismiss the Second Amended Complaint, ECF 38; Exhibit A -Jensen's November 28, 2020 Letter to BOP re: dental care and heating conditions at FCI Danbury during Winter 2018-2019, Jensen's Standard Form 95, and BOP Regional Counsel's Denial Letter dated December 20, 2020 ("Ex. A."), ECF 38-1; Exhibit B - Jensen's SF-95 dated January 30, 2021, asserting claims regarding insufficient dental treatment and heating conditions at FCI Danbury during Winter 2018-2019 ("Ex. B."), ECF 38-2; Exhibit C - BOP Regional Counsel's Denial Letter dated August 11, 2021 and November 3, 2021 ("Ex. C."), ECF 38-3.

On January 30, 2021, Jensen mailed two new SF-95s with accompanying letters. *See* Ex. B. One of the SF-95s concerned only her claim for inadequate dental treatment at FCI-Danbury. *See* Ex. B at 2-6. She sought $7 million dollars in damages for personal injury. *Id.* The other SF-95 detailed her claim for inadequate heating conditions at FCI-Danbury during the 2018-2019 winter and again sought $7 million dollars in damages for personal injury. *Id.* at 9-13. Neither SF-95 asserted claims regarding dental care at MDC, or visitation privileges, oversize uniforms, pillows, blankets, inadequate cooling at FCI-Danbury and MDC. In connection with both SF-95s, Plaintiff also stated by letters that the FCI-Danbury staff had incorrectly advised her on the proper mechanism for submitting her claims, which, in Plaintiff's view, "caus[ed] initial delay[s]" in the BOP receiving her claims. *Id.* at 5, 12. Moreover, she stated that "procedural hurdles created by [the BOP] . . . d[id] not change the original service date" of her claims. *Id.* She also restated that she would settle both claims for five million dollars each. *Id.*

The BOP denied Plaintiff's administrative claims asserted in both SF-95s. *See* Ex. C. On August 11, 2021, the BOP denied Plaintiff's claim for inadequate dental care because "a review of [her] medical records" showed that "there [was] not sufficient evidence to substantiate [her] allegations" and that Plaintiff's records reflected that "[she] received appropriate dental and medical assessments" including deep scaling, prescription medication, oral rinses, and numerous clinical encounters." Ex. C at 2. The BOP informed Plaintiff that she could bring an action in federal court within six months of the date of this response letter. *Id.* On November 3, 2021, the BOP also denied Plaintiff's claim that "a temporary heating system [] made [her] sick and caused her to pass out" and that "medical staff did not provide adequate medical care" following the incident. *Id.* at 5. The BOP explained that "a review of [her] medical records" showed that "there [was] not sufficient evidence to substantiate [her]allegations," that there "[was] no record of any

heating system producing toxic fumes," and that there "[was] also no record of [Plaintiff] complaining to medical staff of illness or fainting caused by any fumes." *Id.*  The BOP informed Plaintiff that she could bring an action in federal court within six months of the date of this response letter.  *Id.*

## PROCEDURAL HISTORY

On February 28, 2022, Plaintiff commenced this action, *see* Complaint, ECF 1, and she subsequently filed an amended complaint, Amended Complaint, ECF 20.  In lieu of filing an answer, Defendant requested a pre-motion conference on its anticipated motion to dismiss the amended complaint.  Renewed Motion for Pre-Motion Conference, ECF 21.  In response, Plaintiff requested an unopposed extension of time to allow her to obtain a certificate of merit, which the Court granted.  Response Letter to Renewed Motion for Pre-Motion Conference, ECF 22; Docket Order dated February 14, 2023.

Plaintiff's attorney moved to withdraw, which the Court granted, and Plaintiff indicated that she would proceed pro se in this action.  Minute Entry Order dated November 2, 2023.  On November 26, 2023, Plaintiff filed her second amended complaint, which is the operative pleading in this action, *see* SAC, ECF 33, and on March 18, 2024, Defendant filed a fully briefed motion to dismiss the second amended complaint.

## LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting subject matter jurisdiction must establish by a preponderance of the

evidence that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196, 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022). Further, a district judge "may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues." *Id.*; *see Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (finding court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits").

**B.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**DISCUSSION**

Plaintiff asserts the following claims in this action.  With respect to alleged inadequate dental care at FCI-Danbury and MDC, Plaintiff asserts tort claims for medical malpractice, intentional and reckless disregard, gross negligence, negligence, failure to train and supervise, and emotional distress.  SAC ¶¶ 10-46.  With respect to the inadequate heating conditions at FCI-Danbury, Plaintiff asserts tort claims of intentional and reckless endangerment, intentional and reckless disregard, gross negligence, negligence, failure to train and supervise, and emotional distress.  *Id.* ¶¶ 47-82.  Finally, Plaintiff asserts a cruel-and-unusual-punishment claim under the Eighth Amendment related to her visitation privileges, oversized uniforms, inadequate heating and cooling, and limitations on blankets and pillows.  *Id.* ¶¶ 83-111.

Defendant makes the following jurisdictional arguments for dismissal.  First, Defendant states that Plaintiff's administrative claims in the SF-95s were limited to the alleged inadequate dental care at FCI-Danbury and the alleged inadequate heating conditions at FCI-Danbury during the winter of 2018-2019 and therefore argues that any other claims asserted in the SAC should be dismissed for lack of subject-matter jurisdiction because Plaintiff did not administratively assert them in the SF-95s and therefore did not adequately present to the BOP.  Specifically, Defendant argues that the following claims in the SAC should be dismissed for failure to satisfy the FTCA's presentment requirement: (1) Plaintiff's claims in the SAC related to MDC, (2) Plaintiff's claims in the SAC for cruel and unusual punishment regarding visitation privileges, oversize uniforms, pillows, blankets, and inadequate cooling.  Def.'s MOL at 11, 12.  Second, Defendant argues that part of Plaintiff's claims for alleged inadequate dental care premised on events that occurred before January 30, 2019, are time-barred because Plaintiff submitted her SF-95 on January 30, 2021, and the FTCA requires a claimant to submit claims within two years of their accrual date.  *Id.* at 12.

Third, Defendant argues that Plaintiff's Eight Amendment claim should be dismissed because the FTCA has not waived immunity for constitutional tort claims. *Id.* at 14. Fourth, Defendant argues that Plaintiff's claims related to the inadequate heating conditions at FCI-Danbury during the 2018-2019 winter fall under the discretionary function exception to the FCTA and therefore are subject to dismissal. *Id.* at 15. Alternatively, Defendant argues that Plaintiff fails to state a claim for medical malpractice related to the alleged inadequate dental care because Plaintiff did not file a certificate of merit as required under Connecticut and New York law to sustain that claim. *Id.* at 17. The Court addresses each argument in turn.

## A.    The FTCA's Presentment Requirement

A plaintiff asserting claims under the FTCA "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence" and that "she exhausted her administrative remedies by presenting her claims to the appropriate federal agency before filing suit." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (citations omitted), *cert. denied*, 139 S. Ct. 2748, (2019); *see also* 28 U.S.C. § 2675(a). Adequate presentment of a claim under the FTCA requires "a written notice of [the] claim which provides enough information to enable an agency to investigate and ascertain the strength of a claim," including sufficient information for the agency to "estimate the claim's worth." *Collins v. United States*, 996 F.3d 102, 109, 111 (2d Cir. 2021); *Romulus v. United States*, 160 F. 3d 131, 132 (2d Cir. 1998). Such notice must provide the agency "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins*, 996 F.3d at 119.

Here, Plaintiff's SF-95s are limited to alleged conditions at FCI-Danbury. Indeed, Plaintiff did not assert in the SF-95s any claims related to her incarceration at MDC. Nor did she administratively assert claims related to visitation privileges, oversize uniforms, inadequate cooling during winters, lack of blankets during freezing winters, and prohibition on more than one pillow. As such, these claims are subject to dismissal for failure to satisfy the FTCA's presentment requirement because the BOP did not have notice to reasonably investigate these claims.

Further, contrary to Plaintiff's assertions, the absence of any specific information regarding MDC in the SF-95 (in the face of numerous explicit references to FCI-Danbury) did not provide notice and reasonable opportunity to the BOP to investigate claims at MDC. *See Collins*, 996 F.3d at 119. Plaintiff argues that Defendant's position that it did not have notice of her dental claims at MDC "is disingenuous" because she "complained to staff at both FCI-Danbury and MDC" and her "medical records necessarily include[d] treatment at both facilities." Pl.'s Opp. at 3. Plaintiff also asserts, without citation to any legal authority, that "there is no requirement under [the FTCA] that [she] specifically distinguish [her] claim of ongoing mistreatment on the same issue based on the facility at which [she] was incarcerated." *Id.* at 4. Plaintiff's arguments are unavailing.

Plaintiff's assertion that MDC officials had access to her medical records through the BOP and therefore she did not need to mention MDC in her SF-95, is inconsistent with the FTCA's requirement of notice. The spirit of the FTCA's presentment requirement is to put an agency on notice of a claimant's particular claims. Access or possession by that agency of documents that may potentially be relevant to a claim does not clear the notice bar. In other words, notice upon the BOP may not be assumed simply because FCI-Danbury and MDC, facilities managed by the BOP, have access to documents about Plaintiff's medical treatment.

In sum, Plaintiff did not administratively assert claims related to dental care at MDC and did not assert claims that form the basis of her third cause of action of unusual and cruel punishment under Eighth Amendment. Her failure to do so "deprives [this Court] of subject matter jurisdiction over [these] FTCA claims" asserted in the SAC. *Leytman v. United States*, 832 F. App'x 720, 722 (2d Cir. 2020) (citation omitted). Consequently, all of Plaintiff's claims in this action that she did not administratively assert and present to the BOP are dismissed for lack of subject matter jurisdiction.[4] *Id.*

The third cause of action for alleged violation of her Eighth Amendment right is dismissed for the independent reason that the FTCA "has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts under the federal constitution." *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (alteration in original); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (where a plaintiff asserts a deprivation of a federal constitutional right in FTCA action, such as violation of the Eighth Amendment, no subject-matter jurisdiction exists over that claim); *see also Tigano v. United States*, 527 F. Supp. 3d 232, 254 (E.D.N.Y. 2021) (dismissing plaintiff's Eighth Amendment claim against United States as barred by sovereign immunity); *Gonzalez v. United States*, 16-CV-1494 (KAM), 2018 WL 1597384, at *6 (E.D.N.Y. Mar. 31, 2018) (dismissing plaintiff's violation of due process count under FTCA against United States because "FTCA's waiver of sovereign immunity does not extend to constitutional tort claims against the United States").

---

[4] Moreover, "[i]n the interest of speedy resolution of [her] claims, [Plaintiff] concede[s] to [the United States] . . . any factual situations not related to [her] dental or heating claims." Pl.'s Opp. at 3. Thus, Plaintiff has withdrawn her claims related to the alleged violation of her visitation rights.

**B.      Plaintiff's Alleged Inadequate Dental Care at FCI-Danbury**

Plaintiff alleges that she received inadequate dental care at FCI-Danbury "for all [her] years" at FCI-Danbury, without providing any specific dates or timeframes. *See* SAC ¶¶ 10, 16-25, 37-46.  Defendant construes this as Plaintiff referencing to her entire period of incarceration from 2012 until her release in 2020.  Def.'s Mot. at 12.  With respect to these allegations, Plaintiff asserts tort claims for medical malpractice, intentional and reckless disregard, gross negligence, negligence, failure to train and supervise, and emotional distress.  *See* SAC.  Defendant construes Plaintiff's claims to be one for medical malpractice.  Def.'s MOL at 3, 17.  Defendant argues that any claims premised on alleged violations that occurred before January 30, 2019, should be dismissed as time-barred because the FTCA has a two-year statute of limitations and Plaintiff submitted the SF-95 on January 30, 2021.  For the alleged violations that occurred after January 30, 2019, which fall within the limitations period, Defendant argues that Plaintiff's medical malpractice claim should be dismissed because Plaintiff did not file the SAC with a certificate of merit as required for medical malpractice claims brought in Connecticut and New York.

**1.      Statute of Limitations Regarding Claims Premised on Events Occurring before January 30, 2019**

The FTCA has a two-year statute of limitations.  "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b).  "A claim under the Federal Tort Claims Act accrues on the date that a plaintiff discovers that he has been injured," *Valdez v. United States*, 518 F.3d 173, 177 (2d Cir. 2008), or at the time that a plaintiff "has or with reasonable diligence should have discovered the critical facts of both [her] injury and its cause," *Corcoran v. New York Power Authority*, 202 F.3d 530, 544 (2d Cir. 1999) (citation omitted).  A plaintiff is not required to "know each and every relevant fact of [her] injury or even that the injury implicates a

cognizable legal claim." *Corcoran*, 202 F.3d at 544. Rather, a plaintiff only needs to know "the basic facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citation omitted).

Plaintiff presented her claims to the BOP on January 30, 2021, therefore Plaintiff's claims premised on alleged inadequate dental care that accrued before January 30, 2019, are time-barred under the FTCA's two-year statute of limitation. There is no question that Plaintiff was aware that she was not receiving the dental care she believed she was entitled to and necessary to treat her gingivitis as early as the beginning of her incarceration at FCI-Danbury in 2012. Indeed, according to the SF-95s, Plaintiff was aware of her chronic gingivitis *before* she began her term of incarceration at FCI-Danbury in *2012*. Ex. B at 4; *see* SAC ¶ 10. Plaintiff also stated that she was aware "[f]or years" that she was not receiving adequate treatment for chronic dental disease while incarcerated, noting that it "progressively [got] worse." Ex. B at 4; *see* SAC ¶¶ 14, 17. She also urged the medical staff "at every visit" to provide her with a different treatment, including seeing a specialist, and she asserted that, when her requests were denied, she "followed the necessary administrative steps to seek such relief." SAC ¶¶ 22-25; *see* Ex. B at 4. Thus, Plaintiff knew the "basic" and "critical facts of [her] injury and causation" well before January 30, 2019, and because the alleged violation occurred more than two years—and up to nearly nine years—before she submitted her SF-95 to the BOP in January 2021, they are time-barred.

Plaintiff invokes the continuing violation doctrine to maintain suit based on alleged inadequate dental care that occurred before the January 30, 2019 accrual date. Defendant argues that the continuing violation doctrine, which is an exception to the normal knew-or-should-have-known discovery rule for accrual date in FTCA actions, does not apply here. Specifically,

Defendant characterizes Plaintiff's claims as discrete denials of dental care and requests for specialized care at separate dental visits, even though the claims involved ongoing care, and her disease was progressive in nature.  Def.'s MOL at 13-14.  Plaintiff disagrees, arguing that requiring her "to plead every factual moment of [her] claim as an individual cause of action" would render the doctrine "a nullity."  Pl.'s Opp. at 5.  Plaintiff's argument is without merit.

A continuing violation is a tort that persists for a long period of time.  Under the continuing violation doctrine, the statute of limitations for a continuing violation begins to run only after the date of the last injury and allows a plaintiff to sue and recover for acts that otherwise would be time-barred when other related tortious conduct occurred within the limitations period.  *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).  That doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).  However, it does not apply to "discrete unlawful acts," even when those acts are part of a "'serial violation' but applies to claims that by their nature accrue only after the plaintiff has been subject to some threshold amount of mistreatment."  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Morgan*, 536 U.S. at 114–15).  A discrete act "'occur[s]' on the day that it 'happen[s]'" and "starts a new clock for filing charges alleging that act."  *Morgan*, 536 U.S. at 110, 113.

The continuing violation doctrine does not apply to Plaintiff's claims related to dental care that pre-date January 30, 2019.  This is because the doctrine applies to circumstances where plaintiff's injury was unknown or undiscoverable to her and plaintiff was unable to determine that a violation had occurred until after a threshold amount of mistreatment.  That is not the case in this action.  Here, Plaintiff alleges that she was aware that FCI-Danbury medical officials denied her

dental care between 2012 and 2019, repeatedly voiced her disagreement with dental treatment at every visit and took the "necessary administrative steps" to get the care she believed she was entitled to.  Thus, for the pre-January 2019 claims, Plaintiff knew that the alleged violations had occurred by that time and asserted her rights at the time of the violation.  *Kronisch*, 150 F.3d at 121 (a plaintiff's knowledge of both the existence and the cause of her injury is dispositive); *see also Valdez*, 518 F.3d at 177.  As such she cannot now rely on the continuing violation doctrine to bring claims related to the otherwise time-barred events.  *Kronisch*, 150 F.3d at 122.  Further, the alleged violations were clear and distinct to Plaintiff at each dental visit that preceded the limitations period, and she has not alleged that she discovered a distinct injury thereafter during the limitations period.

Moreover, the Court finds that none of the rationales supporting a plaintiff availing herself of the continuing violation doctrine in the context of medical malpractice claims are implicated here.  The Second Circuit provided two rationales that undergird the doctrine: (1) "it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries," and (2) "it [is] absurd to expect a patient being treated by a doctor or hospital to interrupt corrective treatment by instituting suit against either while under their continuing care."  *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080-81 (2d Cir. 1988).  None are present in Plaintiff's claims in this case.  By Plaintiff's own allegations, she has "demonstrated that [she] was aware of the alleged deficiency of the treatment [she] was receiving.[5] *Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, 05-CV-6998 (DLC), 2006 WL

---

[5] Plaintiff's assertion that she was "lulled into complacency with the promise of treatment that never came" is unavailing.  Pl.'s Opp. at 6.  Plaintiff has complained that her chronic gingivitis required treatment by a specialist doctor. And in context of FTCA medical malpractice suit, "[t]he Supreme Court explained its unwillingness to treat 'a plaintiff's ignorance of his legal rights'—the right to sue for malpractice—in the same forgiving way that it was willing to treat his 'ignorance of the fact of his injury or its cause.'" *Valdez*, 518 F.3d at 178 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

2882975, at *3 (S.D.N.Y. Oct. 10, 2006) (declining to find continuing violation doctrine applied when plaintiff knew that "he was not receiving the treatment he believed was necessary as early as his first few months at Otisville").  Plaintiff's repeated complaints to FCI-Danbury officials about the treatment she was receiving shows that she was not afraid to take issue with FCI-Danbury dental staff's treatment course and decisions while she was in their care.  *Id.*

This Court also finds persuasive out-of-circuit decisions that held that the continuing violation doctrine does not apply to claims regarding dental care brought under the FTCA.  *See, e.g., Crooker v. United States,* 13-CV-30199 (FDS), 2014 WL 3699172, at *9 (D. Mass. July 23, 2014) (where complaint listed multiple instances before accrual date when plaintiff requested restorative dental care, "indicating that he knew of his injury" before accrual date, continuing violation doctrine did not apply); *Kannell v. Griffin,* 20-CV-1575 (CLM) (NAD), 2022 WL 2441293, at *1 (N.D. Ala. July 5, 2022) (declining to apply continuing violation doctrine where plaintiff knew that defendants had denied her medical and dental care between period outside of limitations period and finding that plaintiff's claims are barred by statute of limitations).  This is because "[t]he rationale behind the 'discrete act' rule is that when a plaintiff is harmed by a discrete act, [she] should be aware of it . . . ."  *Powell v. United States*, 18-CV-5378 (ERK) (MMH), 2024 WL 4329842, at *3 (E.D.N.Y. Aug. 20, 2024) (quoting *Stephens v. Hofstra Univ. Sch. of L.*, 01-CV-5388, 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005)).  "To permit [her] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed . . . would be to enable [her] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims."  *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).  Accordingly, Plaintiff's claims related to alleged dental care that occurred before January 30, 2019, are dismissed.

### 2.    Plaintiff's Dental Care Post-January 30, 2019

As stated above, *see* Discussion Section A, Plaintiff has only presented her inadequate dental treatment claims from her time at FCI-Danbury, located in Connecticut.  Thus, with respect to Plaintiff's claims related to alleged inadequate dental care at FCI-Danbury, only those premised on conduct that occurred after January 30, 2019, remain.  Defendant seeks dismissal of these remaining claims, construing them as medical malpractice claims.  Def.'s Mot. at 3 ("Finally, as to the remaining claims asserted in Plaintiff's first cause of action, stemming from her dental care and grounded in medical practice, Plaintiff has failed to state a cognizable claim); *id.* at 17 ("Plaintiff fails to state claim for medical malpractice.").  Defendant argues that Plaintiff has failed to state a claim for medical malpractice under Connecticut and New York state law.

The FTCA requires courts to apply the law of the state where the alleged tort occurred, here Connecticut. 28 U.S.C. § 1346(b)(1) (the FTCA provides that United States "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *Borley v. United Sates*, 22 F.4th 75, 78 (2d Cir. 2021) ("[I]n an FTCA action, 'courts are bound to apply the law of the state . . . where the [tort] occurred'—in this case, [Connecticut].") (citing § 1346(b)(1)) (second alteration in original) (quoting *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000)).  Thus, Connecticut law governs the analysis of the medical malpractice claim.

To state a claim for medical malpractice under Connecticut law, a plaintiff must allege "(1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury."  *Wynne v. Town of E. Hartford*, 30-CV-001834, 2021 WL 5494606, at *7 (D. Conn. Nov. 23, 2021) (quoting *Gold v. Greenwich Hosp. Ass'n*, 262 Conn. 248, 254-55 (2002)).  The SAC alleges that "[i]t is widely known that, if left untreated, [Plaintiff's] oral disease could lead to life-threatening complications." SAC ¶ 11.  It

goes on to state that FCI-Danbury medical staff "knew that [Plaintiff's] condition required special medical treatment to eradicate the [chronic dental] disease and prevent further damages" but that they "refused to provided [her] with the treatment [she] needed." *Id.* ¶¶ 18, 19, 21. The staff instead only provided her "basis treatment" and they "knew that the recommend 'basic treatment' would not help [her] condition" and would rather worsen it "while having admitted that [she] needed to see a specialist." *Id.* ¶¶ 19, 20. The staff subsequently "approved [her] request to see a specialist." *Id.* ¶ 39. Finally, she alleges that once she was released from FCI-Danbury, she sought professional dental care, where it was "confirmed that FCI-Danbury […] w[as] grossly negligent and careless in [her] treatment." *Id.* ¶ 42. While Plaintiff does not explicitly use the terms "standard of care" and "deviation," these facts are sufficient to plead these two elements. These allegations suffice to plausibly plead a deviation of standard of care because a reasonable inference could be drawn that the applicable standard of care for chronic gingivitis required special treatment or at least more than basic treatment—as she received special treatment after her incarceration— and that FCI-Danbury staff deviated from that standard by providing her only basic treatment. *See Jones v. Forbes*, 16-CV-14 (VAB), 2016 WL 4435081, at *5 (D. Conn. Aug. 19, 2016) (plaintiff stated plausible medical malpractice where plaintiff alleged that defendants did not give him the medical treatment that he should have received). The SAC is replete with allegations that the denial of the treatment Plaintiff believed she should have received caused her disease to worsen, therefore has sufficiently pleaded the third element of causation. *See, e.g.,* SAC ¶¶ 17, 44.

Defendant nonetheless advances several arguments for dismissal of plaintiff's medical malpractice claim, none of which the Court finds meritorious. First, Defendant argues that Plaintiff's medical malpractice claim is subject to dismissal because she failed to comply with Connecticut's special pleading requirement for medical malpractice claims. Def.'s MOL at 18.

Specifically, Conn. Gen. Stat. § 52-190a provides that a plaintiff asserting a medical malpractice claim in Connecticut state court must include with the complaint a certificate of good faith and a written opinion from a health care provider regarding the evidentiary basis for her claim. Conn. Gen. Stat. § 52–190a. Defendant is correct that Plaintiff did not attach a certificate of good faith nor a written opinion from a health provider when she filed the SAC, even though the basis for seeking leave from the Court to file the SAC was for her to obtain and submit a certificate of good faith and merit.

Regardless, the Second Circuit has rejected this basis for dismissal of medical practice claims in FTCA actions, holding that Conn. Gen. Stat. § 52–190a is a procedural rule and therefore inapplicable in federal court. *Corley v. United States*, 11 F.4th 79, 84-85 (2d Cir. 2021) (finding "particularly instructive" a district court decision in *Shields v. United States*, 436 F. Supp. 3d 540 (D. Conn. 2020) that rejected Conn. Gen. Stat. § 52–190a's applicability in federal court). The Court reasoned that this law, by requiring certificates and medical opinions to be filed to commence a federal action and state a claim for relief, constitutes a "heighted pleading requirement" that is "in direct contrast" with Federal Rule of Civil Procedure 8's "notice pleading" and Rule 4's rules regarding service of process—when the Federal Rules of Civil Procedure controls in federal action. *Id.* at 89. The Court further stated that "the United States as a defendant must comply with the same standard of care and is liable 'in the same manner and to the same extent' as a similarly situated private party" and "by requiring tort cases against it to be brought in federal court, the United States forgoes any tactical advantages a defendant might have under the procedural rules applied in state court." *Id.* The Court vacated the lower court's decision for "applying § 52-190a instead of the Federal Rules of Civil Procedure." *Id.* Here, Defendant has not addressed the Second Circuit's controlling decision in *Corley* nor has it argued that it is

disguisable from this action.  Consequently, Plaintiff's failure to attach a certificate of merit does not support dismissal of her medical malpractice claim asserted in a federal court.

Second, Defendant argues that "the lack of medical support for Plaintiff's alleged theory of malpractice is telling" and that a difference of opinion between an incarcerated person and a medical doctor is insufficient to state a plausible claim for medical malpractice.[6]  Def.'s MOL at 19 (first citing to *Jiminez v. United States*, 11-CV-4593 (RJS), 2013 WL 1455267, at *2 (S.D.N.Y. Mar. 25, 2013); then citing *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021)).  However, these cases do not support Defendant's position that, in the context of a medical malpractice claim, a difference of opinion about a course of treatment cannot form the basis of a plausible claim for relief.[7]

Finally, Defendant relies on a New York state court decision and a New York federal court's decision applying *New York* medical malpractice common law to argue that Plaintiff has failed to allege causation, asserting that while Connecticut state law governs, the medical malpractice claim analysis is the same under New York and Connecticut state law.  Def.'s MOL at 18 (citing *Imperati v. Lee*, 132 A.D.3d 591 (1st Dep't 2015) and *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008); *see* Def.'s Reply at 9-10.  Even assuming *arguendo* that the elements of a medical malpractice claim are the same under New York and Connecticut, the SAC sufficiently pleads medical malpractice claim under New York law.  *See, e.g., Jones v. Beth Isr.*

---

[6] After Plaintiff correctly argued in opposition that she is not required to provide evidentiary support for her claim at the pleading stage, Defendant walked back that argument and argued that it presented other bases for dismissal but nonetheless maintained that a disagreement of opinion with respect to course of treatment does not sustain a medical malpractice claim.  Def.'s Reply at 10.

[7] *Jiminez* dismissed the medical malpractice claim because "[plaintiff] fail[ed] to set forth any injury that is the proximate result of the medical attention he received—or failed to receive—on these four [medical visits]" even though "he sought an MRI and examination by an "outside independent Specialist" in addition to the treatment that he received, *see Jiminez*, 2013 WL 1455267, at *13, and *Darby*, after finding that the plaintiff had failed to state an 42 U.S.C. § 1983 claim for deliberate indifference to serious medical needs, declined to exercise supplemental jurisdiction over the medical malpractice claim, *see Darby*, 2019 WL 1994490, at *7.

*Hosp.*, 17-CV-3445 (GHW), 2018 WL 1779344, at *9-10 (S.D.N.Y. Apr. 12, 2018) (plaintiff adequately pleaded medical malpractice claim even where plaintiff did not expressly allege applicable standard of care but stated that "he 'should have been medicated' yet 'was not'" and pleaded causation when he alleged that his injury was "because of his lack od medication").

Further, it is worth noting that a New York court's interpretation of New York tort law sheds no light on how Connecticut tort law is interpreted or applied. Defendant has not provided any case law holding that Connecticut and New York courts interpret medical malpractice claims in the same way, such that Defendant could rely on New York state and federal decisions to support its position that Plaintiff has not adequately pleaded causation. Consequently, Defendant has failed to carry its burden. *Muhammad v. N.Y.C. Transit Auth.,* 450 F. Supp. 2d 198, 202 (defendant bears burden to entitlement to dismissal of claims) (citing *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir. 2003)); *see also* Charles Alan Wright & Arthur R. Miller, *5B Federal Practice and Procedure* § 1357 (4th ed. 2024) (on a motion to dismiss for failure to state claims, "[u]ltimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists").

For the above reasons, Defendant's motion to dismiss Plaintiff's medical malpractice claim is denied.

**C.    Heating Conditions at FCI-Danbury**

With respect to the alleged inadequate heating conditions at FCI-Danbury during the winter of 2018-2019, Plaintiff asserts tort claims of intentional and reckless endangerment, intentional and reckless disregard, gross negligence, negligence, failure to train and supervise, and emotional distress. SAC ¶¶ 47-82. Defendant argues that Plaintiff's negligence claims should be dismissed for lack of subject-matter jurisdiction because these claims fall under the discretionary function exception to the FCTA. Def.'s MOL at 15-17.

The discretionary function exception exempts the United States from liability for:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The two-prong *Berkvoitz-Gaubert* test determines whether government conduct involves a discretionary function or duty under § 2680(a). *Coulthurst v. United States*, 214 F.3d 106, 109-10 (2d Cir. 2000). That test bars suit only if two conditions are met:

(1) the acts alleged to be negligent must be discretionary, in that they involve "an element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis.

*Id.* (citations omitted).

As a threshold matter, Plaintiff's claims for negligent failure to train and supervise related to the inadequate heating condition fall within the discretionary function exception and therefore are dismissed. *See Cohen v. United States*, 640 F. Supp. 3d 324, 347-48 (S.D.N.Y. 2022) (Plaintiff's "negligent hiring, retention, training, and supervision claim[s] . . . cannot proceed" because they fall "within the discretionary function exception"); *see also Tigano*, 527 F. Supp. 3d at 255 (same); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) ("[F]ederal courts have found such hiring, training, and supervision decisions generally fall within the exception.").

With respect Plaintiff's remaining claims, whether the discretionary function exception applies is a closer call. Plaintiff alleges that FCI-Danbury was "grossly negligent" and "careless [in the] manner" they treated her, which, according to Plaintiff, was due to a "widespread . . . poor

oversight or quality assurance by FCI-Danbury" and a "total disregard for the health and well-being of prisoners."  SAC ¶ 80.

Applying the *Berkvoitz-Gaubert* test, the Court must first determine whether FCI-Danbury officials' actions were "discretionary in nature" involving an "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted).  If an exercise of discretion is involved, then the discretionary function exception applies.  But the element of discretion is not present when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Id.*  The exception thus does not apply to a claim that an agency failed to "perform its clear duty" or to "act in accord with a specific mandatory directive."  *Berkovitz v. United States*, 486 U.S. 531, 544 (1988).

The statute governing the duties of the BOP provides that the BOP is in "charge of the management and regulation of all Federal penal and correctional institutions and must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(1), (2).  That statute "does not direct the BOP how to fulfill [these] duties, nor does the statute mandate particular conduct by the BOP"; rather, "[t]he statute gives the BOP officials great discretion to administer their duties as they see fit."  *Ojo v. United States*, 16-CV-4112 (MKB) (LB), 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019).  Here, the acts alleged in the SAC to be negligent and careless are not compelled by statute and are therefore discretionary in nature because they involved some level of judgment or choice by FCI-Danbury staff.  Thus, the first prong of the *Berkovitz-Gaubert* is satisfied.  *See Scott v. Quay*, 19-CV-1075 (MKB) (SMG), 2020 WL 8611292, at *13 (E.D.N.Y. Nov. 16, 2020), *report and recommendation adopted* by Dkt. Order Adopting R&R (E.D.N.Y. Mar. 22, 2021).

Under the second prong of the *Berkovitz-Gaubert* test, a court must evaluate whether a judgment or choice is "grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst*, 214 F.3d at 109 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 322-23). Where a "complaint was broad enough to cover both the types of negligence that are covered by the [discretionary function exception]" and "the types of negligence that fall outside of the [discretionary function exception]," a district court "err[s] in assuming that the negligence alleged in the complaint involved only discretionary functions." *Id.* at 109-10 (vacating dismissal of complaint because the complaint "[was] susceptible to various readings" on how government official's conduct may have caused the injuries complained of).

Here, the SAC is likewise subject to various readings, including that FCI-Danbury staff were careless, or inattentive with respect to the consequences of the lack of heat at FCI-Danbury for weeks. Plaintiff alleges that FCI-Danbury was aware that the heat had stopped working during the 2018-19 winter and, instead of fixing the issue, the staff installed a makeshift heating system that pumped chemical-ladened air into the facility. SAC ¶¶ 48-50. According to Plaintiff, inmates were told to use cardboards to cover gaps in the doorways where the makeshift was installed to block the incoming cold air and they were denied additional blankets. *Id.* ¶¶ 58, 61. Plaintiff asserts that she and other inmates were threatened to be sent to SHU if they complained about the lack of heat and the toxic fumes and an assistant warden sent to SHU an inmate who had complained to make a public example of her, *id.* ¶62-63, and further, she recounts that the warden said that he would "fuck anyone that fucked with his job!" *Id.* ¶ 65. Plaintiff alleges that she told an officer that she was feeling sick from the fumes but he ignored her, and when she lost consciousness, the officer was ordered not take her to medical unit for treatment. *Id.* ¶¶ 67-73. Therefore, she asserts that FCI Danbury was "reckless, grossly negligent, and careless" in how it

"treated [her]" and exhibited a "total disregard for the health and well-being of prisoners." *Id.* ¶ 80.

At the pleading stage, the Court need not determine the merits of the "negligent guard theory" in this case or even its capacity to withstand summary judgment, to allow a claim to proceed.  *See Scott,* 2020 WL 8611292, at *14 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475-76 (2d Cir. 2006)); *cf. Coulthurst*, 214 F.3d at 111 (while a plaintiff is not entitled to trial on an ambiguous complaint, dismissal "cannot be justified given the ambiguous allegations").  On these facts, Plaintiff has plausibly alleged that the inadequate heating conditions at FCI-Danbury were the result of the FCI Danbury staff's careless inattention and the harsh conditions they created.  Plaintiff has also plausibly alleged that the decisions leading to the inattention and conditions "were not properly addressed out of lack of concern and laziness" and were not rooted in policy considerations.  *Scott*, 2020 WL 8611292, at *14.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted with respect to Plaintiff's claims related to dental treatment received prior to January 30, 2019, and Plaintiff's claim for unusual and cruel punishment under Eighth Amendment, and denied with respect to

Plaintiff's claims related to dental treatment received at FCI-Danbury after January 30, 2019, and related to heating conditions at FCI-Danbury during winter 2018-19.


SO ORDERED.

                                                    /s/
                                                    ORELIA E. MERCHANT
                                                    United States District Judge

March 6, 2025
Brooklyn, New York